IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NASSAR ABOUSAMAK and JOEL WOODSIDE,

    Plaintiffs,

V.

Case No:

BUCKHEAD LIFE RESTAURANT GROUP INC., and CHOPS BOCA RATON LLC, d/b/a CHOPS LOBSTER BAR,

    Defendants.

_____

## HYBRID SECTION 216B COLLECTIVE ACTION COMPLAINT FOR AGE DISCRIMINATION AND STATE CIVIL RIGHTS ACT VIOLATIONS AND DEMAND FOR JURY TRIAL

Plaintiffs, NASSAR ABOUSAMAK and HAL JOEL WOODSIDE, sue the above captioned Defendants, BUCKHEAD LIFE RESTAURANT GROUP INC. (BLG) and CHOPS BOCA RATON LLC (CHOPS) d/b/a CHOPS LOBSTER BAR, individually and on behalf of all others similarly situates for discriminatory and employment practices in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq. ("ADEA") as well individually sue Defendants for willful violations of the Florida Civil Rights Act, F.S. Sections 760.01-760.11 and 509.092 for unlawful age discrimination.

1

1) This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because Plaintiffs' claim involves a federal question under 29 U.S.C. §§ 621, et seq. This Court has personal jurisdiction over this action because Defendants operate substantial business in this district and the acts complained of occurred in this District from Defendants' restaurant located at 101 Plaza Real St., Boca Raton, FL 33432.

2) Venue is proper to this Court pursuant to 28 U.S.C. 1391(b) because the acts complained of occurred in this District from Defendants' restaurant, Chops Lobster Bar located at 101 Plaza Real St., Boca Raton, FL 33432.

3) Plaintiff Abousamak was employed as a server at Defendants' restaurant, Chops Lobster Bar from approximately June 2020 to January 7, 2022.

4) Plaintiff Abousamak, 62 years old, has worked as a server in the hospitality industry as a server for over 40 years.

5) Plaintiff Woodside, age 55, was employed as a server at Defendants' restaurant, Chops Lobster Bar from approximately January 2021 to February 2022.

6) Plaintiff Woodside has worked in the hospitality industry for several decades as a server, cook, manager and bartender.

7) Defendant, BUCKHEAD LIFE RESTAURANT GROUP INC (BLG), is a foreign, for-profit Corporation with principal place of business in Atlanta, Georgia located at 265 Pharr Rd., NW, Atlanta, GA, 30308-2241.  Defendant

BLG may be served by its registered agent, Adi Allushi, Secretary, at the company office located at 600 Peachtree Street, NE, Suite #4700, Atlanta, GA 30308.

8) As per Defendant BLG's Website, https://buckheadrestaurants.com/, BLG owns 10 restaurants in the Atlanta and South Florida area, including the Chops Lobster Bar.  The overarching goal for all of BLG's restaurants is to cater to fine dining experience.

9) Defendant CHOPS BOCA RATON LLC (CHOPS), is a Florida for profit corporation and a wholly owned subsidiary of Defendant BLG, and may be served through its registered agent: CORPORATION SERVICE COMPANY, 1201 HAYS STREET TALLAHASSEE, FL 32301.

10)  At all times material hereto, BLG and CHOPS were joint Employers of Plaintiffs, and Employers within the meaning under the ADEA, and the FRCP. Further, BLG and Chops share officers, corporate offices, pay Plaintiffs from the same locations, and share company policies and procedures such that they are a unified business enterprise.

11)  This Court has supplemental jurisdiction over the FRCA claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

12) The United States District Court for the Southern District of Florida has personal jurisdiction over both Defendants because they jointly do business in Florida and in this District, and because the acts complained of and giving rise to the alleged claims, occurred in and emanated from this District.

13) Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

14) Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to his ADEA claims.  Abousamak filed a charge of age discrimination on or about April 26, 2022 with the Equal Employment Opportunity Commission ("EEOC"), and Woodside filed his charge on or about April 26, 2022.  More than 60 days has past since the EEOC filed charges and no action has been taken by the EEOC; thus, Plaintiffs may thus commence with filing this action pursuant to 29 U.S.C. § 626(d)(1).  Any and all other prerequisites to the filing of this suit have been met.

15) This Court has supplemental jurisdiction over Plaintiffs state law claims and the Florida Class Action under the Florida Civil Rights Act, F.S. Sections 760.01-760.11 and 509.092.

**GENERAL FACT ALLEGATIONS**

16) Defendants jointly own, manage and operate the Chops Lobster Bar in Boca Raton, which is a restaurant and bar.

17) Defendants individually and jointly employ more than 300 employees and are subject to the ADEA, and the FRCP as an employer.

18) In November 2020, Plaintiff Abousamak discovered that he was earning far less in tips than the younger servers per shift, and per equivalent workweeks.

19) Abousamak then commenced with complaints to management of the perceived discriminatory practices related to his age, including the preferential treatment for younger staff for the known higher tip and higher customer spend tables and sections of the restaurant.

20) Thereafter, Plaintiff Abousamak took notice that he was assigned to work the patio more often than the much younger servers.

21) The layout of the restaurant is such that the patio is farthest seating area from the kitchen, so it takes longer to get orders from the kitchen to the customers, and therefore restricted on the number of orders that can be served.

22) Further communications about the perceived discriminatory treatment with the general manager resulted in the manager calling Plaintiff Abousamak "paranoid", refusing to investigate the alleged discriminatory treatment and refusing to involve the corporate office or HR in the complaints.

23) Moreover, Defendants' managers began to strictly assign just parties of 2 to Plaintiff Abousamak while assigning larger parties to the younger servers,

resulting in a significancy loss of income opportunity for Plaintiff Abousamak as compared to all the younger servers.

24) Plaintiffs were able to confirm with other servers that they were also being assigned smaller parties while the younger servers were assigned larger ones, earning far more income.

25) Plaintiff Abousamak involuntarily left his employment with Defendants at the end of his shift on January 7, 2022 after being again subjected to working outside, suffering financially from low tips, and substantially less tips than the younger servers, and his complaints being intentionally ignored and having to suffer through retaliatory conduct and offensive comments thereafter by management.

26) It was made clear to Plaintiffs that their employer used age as a factor in hiring and how they treated employees.

27) During a pre-shift meeting, the general manager requested that the staff assist him in finding new servers who were "preferably 18 years old".

28) Upon information and belief manager O'Rourke was involuntarily transferred from the Chops restaurant thereafter related to the complaints by Plaintiffs.

29) However, Manager Lona O'Rourke continued to retaliate against Plaintiff Abousamak by defaming his character while he was a patron resulting in a verbal altercation between the management of the restaurant and Plaintiff Abousamak.

30) Woodside also resigned in February 7, 2022 after his complaints were swept under the rug and the complaints resulted in retaliation by Defendants.

31) Woodside learned that his income was substantially less per workweek than younger servers and he also was just like Abousamak, assigned to work the exterior tables and sections known by Defendants to result in lesser tips per table and per shift for servers.

32) Defendants assigned larger parties to the younger servers, and also assigned higher number of tables per shift to the younger servers than the Plaintiffs and older workers.

33) Both Abousamak and Woodside earned substantially less income per shift and over the workweeks as compared to the younger servers.

34) Both Abousamak and Woodside had to endure more difficult working conditions, forced to work outside in the hot sun, and suffer through rain and the effects on their income from these elements.

35) Especially when it was very hot, and when raining, customers would prefer and primarily sit inside rather than outside, effecting the incomes of Plaintiffs.

36) Plaintiffs complained to management about the perceived unequal treatment, favoritism for younger staff and being excluded from working the higher paying, higher traffic and tip interior sections, but to no avail.

**COLLECTIVE ACTION ALLEGATIONS**

37) Plaintiffs brings this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) seeking liability-phase injunctive and declaratory relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the United States at any time during the 3 years preceding the filing of this complaint, through the resolution of this action for claims under the ADEA.

### THE PROPOSED PUTATIVE CLASS

**All persons over the age of 40 employed by BLG or any of its wholly under subsidiary companies, including but not limited to Chops Boca Raton, LLC, working at their restaurants as servers, bar tenders and wait staff in the States of Florida and Georgia or who applied for these jobs with these companies during the period of 3 years preceding the filing of this action to the date of trial.**

38) Plaintiffs also brings this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) or monetary damages and other make-whole relief on behalf of a collective of all applicants and deterred prospective applicants for the Covered Positions ages 40 and older in the States of Florida and Georgia at any time from the 3 years preceding the filing of this complaint through the resolution of this action for claims under the ADEA.

39) Plaintiffs, and other potential members of the collective, are similarly situated in that they have all sought and been denied employment or suffered through discriminatory employment practices by Defendants' company policies and

practices that have the purpose and effect of denying them employment opportunities because of their age and/or treating them less differently and less favorably than younger employees.

40) Similarly, Plaintiffs and other potential members of the collective are similarly situated in that they have been constructively terminated from their employment by Defendants because of intentional, and unlawful discriminatory policies and practices to target and eliminate older workers from its workforce.

41) There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Notice should be sent to the collective pursuant U.S.C. §§ 216(b), 626(b). As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiffs and the collective.

42) This policy and pattern or practice includes, but is not limited to:

    a. willfully utilizing a biased recruiting system for server hiring that excludes, deters, and discriminates against workers ages 40 and over;

    b. willfully implementing a policy and practice of intentionally assigning the less income producing tables and sections, including but not limited to the exterior tables and sections of the restaurant to servers ages 40 and over;

  c. willfully assigning the older servers to work in more difficult, physically taxing exterior tables and subjecting them to more strenuous heat, humidity and the elements such as rain;

  d. willfully refusing to hire applicants ages 40 and over for the Covered Positions.

  e. Using these discriminatory policies and practices to intentionally inflict financial harm upon the older workers/servers to cause them to resign and quit.

43) Defendants maintained and implemented these policies and practices with the purpose and effect of denying Plaintiff, and other members of the collective, equal employment and earnings opportunities because of their age. These policies cannot be justified by reasonable factors other than age.

44) Defendants likewise maintained and implemented these intentional and willful policies and practices with the purpose of eliminating its older workers, specifically persons over age 40, and replacing them with younger workers under the age of 40.

45) Defendants are aware, or should have been aware, that federal law requires it to conduct recruitment and hiring for the Covered Positions without regard to an applicant's age.

46) Likewise, Defendants are aware that federal law prohibits using Age as the reason to terminate, or seek to terminate, workers, or treat them differently, differently than their younger peers solely because of their age over 40.

## COUNT I FIRST CLAIM FOR RELIEF
## Intentional Discrimination (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(1)) COLLECTIVE CLAIM

47) Plaintiffs incorporates the preceding paragraphs as alleged above.

48) Plaintiffs have timely filed charges with the EEOC and has thus exhausted his administrative remedies. Sixty days have passed since Plaintiffs has filed charges with the EEOC and no decision or action has occurred.

49) Plaintiff Woodside is 56 years old and Plaintiff Absouamak is 62 years old older workers and covered employees by the ADEA and FRCA.

50) Plaintiffs were qualified individuals that were able to perform the essential functions of their job and did so for the entire tenure of their employment.

51) Age is not an occupational qualification for servers.

52) Plaintiffs were discriminated against based on their age by Defendants when they assigned preferential treatment to younger servers by assigning older servers to patio only shifts and limiting the overall size of the parties seated to the Plaintiffs.

53) The servers who received preferential treatment ages ranged between 18-29 years old.

54) Defendants knew the outside patio was more physically taxing and strenuous than working the inside tables, with air conditioning, but assigned these areas to Plaintiffs to encourage them to resign.

55) Further, the Defendants knew that the exterior area tables resulted in lesser tips for servers than those who worked the interior areas; had less number of patrons and tables comparatively; and thus would result in Plaintiffs and all other older workers earning substantially less than the younger servers in tips.

56) Defendants' actions and conduct constitute willful and intentional acts of age discrimination against Plaintiffs.

57) Defendants' conduct was and is willful, wanton and intended to inflict financial and emotional harm upon Plaintiffs.

58) Plaintiffs also were constructively discharged and forced to leave after their incomes suffered and their complaints of discriminatory treatment were intentionally ignored and, they suffered retaliation and harassment thereafter.

59) The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the ADEA.

60) As a result of Defendants' unlawful, discriminatory conduct, Plaintiffs have suffered economic and non-economic harm, including pain and suffering, humiliation, and loss of income.

61) Plaintiffs income levels were 40% or more less than what the younger servers earned on a weekly basis for equivalent number of work hours.

62) Plaintiffs are aware of another Server who also perceived he was subjected to similar discrimination actions, and who also complained to Defendant about perceived unlawful discrimination, and likewise was forced to resign because of the conditions, the discriminatory policies and practices, and the unequal income opportunities.

63) Defendant Chops is the alter ego of Defendant BLG, and BLG operates its wholly owned subsidiary companies as a unified, single business enterprise

64) Plaintiffs request relief as hereinafter described below.

**COUNT II AGE DISCRIMINATION VIOLATION OF FLORIDA CIVIL RIGHTS ACT, Sections 760.01-760.11 and 509.092 – claims of Abousamak and Woodside individually**

65) Plaintiffs incorporate the preceding paragraphs as alleged above.

66) Both Plaintiff Abousamak and Woodside have timely filed charges with the EEOC and has thus exhausted their administrative remedies. Sixty days have passed since Plaintiffs have filed charges with the EEOC and no decision has been rendered.

67) Defendants engage in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against older workers including the

practice of treating them differently than younger peers, and using their age as the reason to seek termination of their employment.

68) Defendants engage in an intentional, company-wide, and systematic policy, pattern, and/or practices of discrimination against applicants and prospective applicants ages 40 and older.

69) Similarly, Defendants engage in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against older workers ages 40 and older, including the practice of treating them differently than younger peers, and using their age as the reason to seek termination of their employment by subjecting them to working under harsher conditions and lesser earnings opportunities as compared to the younger workers.

70) Defendants have intentionally discriminated against Plaintiffs in violation of the FRCA by, among other things, utilizing a biased recruitment system that substantially prefers prospective applicants ages 18-29 to the determent of older servers.

71) The discriminatory acts that constitute Defendants' pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

72) Age is not a bona fide occupational qualification for servers.

73) Plaintiffs income levels were 40% or more less than what the younger servers earned on a weekly basis for equivalent number of work hours

74) Plaintiffs also were constructively discharged and forced to leave after their incomes suffered and their complaints of discriminatory treatment were intentionally ignored and, they suffered retaliation and harassment thereafter.

75) As a direct result of Defendants' intentional discriminatory policies and/or practices as described above, Plaintiffs have suffered damages including, but not limited to, lost past and future income, loss of other compensation, and the values of fringe benefits, and suffered non-economic damages including mental anguish, humiliation, pain and suffering and harm to their reputations.

76) The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1) and the FRCA.

77) Defendant Chops is the alter ego of Defendant BLG, and BLG operates its wholly owned subsidiary companies as a unified, single business enterprise.

78) Plaintiffs request relief as hereinafter described below.

**PRAYER FOR RELIEF**

    **WHEREFORE**, Plaintiffs prays for the following relief and demand judgment against Defendants:

a. An order conditionally certifying the action to proceed collectively for all other similarly situated; and

b. A ruling that Defendants have unlawfully discriminated against Plaintiffs in violation of the ADEA and FCRA:

c. A ruling that Defendants have unlawfully retaliated against Plaintiffs in violation of the ADEA and FCRA;

d. A ruling that Defendants' actions were willful, malicious, and intentional;

e. An award of all compensatory damages available including: back pay; and in lieu of reinstatement, front pay, damages for all pain and suffering, harm to reputation, mental anguish, humiliation, and embarrassment, and double the sums owed as Liquidated damages;

f. Pre-judgment interest;

g. A ruling that Defendants acted willfully, maliciously and with reckless disregard for Plaintiffs' rights and award Punitive damages under the FRCA F.S. 760.11;

h. An order or judgment awarding reasonable attorneys' fees and costs and expenses of this litigation;

i. An order of Injunctive relief barring Defendants from continuing their unlawful pay practices; and

j. That the Court award any other legal and equitable relief as this Court may deem fair and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Filed this 26th day of July 2022.

*/s/ Mitchell L. Feldman, Esq.*
MITCHELL FELDMAN, ESQ.
FELDMAN LEGAL GROUP
FLORIDA BAR 0080349
6916 W. Linebaugh Ave #101
Tampa, FL 33625
Tele: (877) 946-8293
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiffs* and all others similarly situated